UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SUSAN OLIVIA M., | ) | CV 17-6872-AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff[1] filed this action on September 18, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On August 7, 2018, the parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## PROCEDURAL BACKGROUND

On October 19, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged an onset date of February 1, 2010. Administrative Record ("AR") 37. The applications were denied initially and on reconsideration. AR 37, 155-56, 191-92. On February 3, 2016, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff and a vocational expert testified. AR 67-118. Plaintiff amended the onset date to July 1, 2012. AR 37, 72. On March 14, 2016, the ALJ issued a decision denying benefits. AR 34-51. On July 24, 2017, the Appeals Council denied the request for review. AR 1-6. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

**DISCUSSION**

**A.    Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

**B.    The ALJ's Findings**

The ALJ found that Plaintiff met the insured requirements through December 31, 2013.  AR 39.  Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ found that Plaintiff had the severe impairments of lumbar and cervical degenerative disc disease and affective disorder (bi-polar).  AR 39.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that she could occasionally reach overhead bilaterally and she required a sit/stand option, meaning she could sit for 60 minutes and stand for 5 minutes before she resumed sitting and would stay on task.  She was limited to simple, routine and repetitive tasks; a low stress job defined as only occasional decisionmaking or judgment required and only occasional changes in the work setting; and occasional interaction with the public and co-workers.  AR 42.  Plaintiff was unable to perform past relevant work.  AR 49.  However, there were jobs that existed in

---

[2]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

significant numbers in the national economy that she could perform such as clerk,

assembler and production/machine operator.  AR 50.

### C.    Step Five Determination

At step five of the sequential analysis, the burden shifts to the ALJ to identify jobs

that existed in significant numbers in the national economy that the claimant could

perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Reddick v. Chater*, 157

F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.920.  In meeting this burden, the ALJ

relies primarily on the DOT for information about the requirements of work in the

national economy.  Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4,

2000); *see also Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001).

"There are two ways for the Commissioner to meet the burden of showing that

there is other work in 'significant numbers' in the national economy that claimant can

do:  (1) by the testimony of a vocational expert, or (2) by reference to the

Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "grids").

*Lounsbury*, 468 F.3d at 1114.  "Where a claimant suffers only exertional limitations, the

ALJ must consult the grids.  Where a claimant suffers only non-exertional limitations,

the grids are inappropriate, and the ALJ must rely on other evidence.  Where a claimant

suffers from both exertional and non-exertional limitations, the ALJ must consult the

grids first."  *Id.* at 1115.  The grids are inapplicable when "a claimant's non-exertional

limitations are sufficiently severe so as to significantly limit the range of work permitted

by the claimant's exertional limitations."[3]  *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th

Cir. 2007) (citation and quotation marks omitted).  The testimony of a vocational expert

is required when nonexertional limitations significantly limit the range of work a claimant

can perform.  *Tackett*, 180 F.3d at 1102.

---

[3]    Nonexertional limitations include "postural and manipulative limitations such as
difficulty reaching, handling, stooping, climbing, crawling, or crouching."  *Lounsbury*,
468 F.3d at 1115.

The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs that the claimant can perform. *Tackett*, 180 F.3d at 1100-01. However, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. If the testimony conflicts, the ALJ must obtain a reasonable explanation for the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). The ALJ's failure to inquire, however, can be harmless error when there is no actual conflict, or if the VE provided sufficient support to justify any variation from the DOT. *Id.* at 1154 n.19.

Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the representative sedentary jobs of clerk (Dictionary of Occupational Titles ("DOT") 249.587-014), assembler (DOT 734.687-018) and production/machine operator (DOT 692.685-130). AR 50. Plaintiff argues that there is a potential conflict between the vocational expert's testimony and the DOT in that the representative jobs require frequent to constant reaching.

"For a difference between an expert's testimony and the [DOT]'s listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected. . . . But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "[A]n ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances." *Id.* Nevertheless, even though the duty may not

be triggered, "[t]o avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

In *Gutierrez*, the claimant was precluded from reaching above her shoulder with her right arm. The vocational expert testified that the claimant could perform work as a cashier. *Gutierrez*, 844 F.3d at 807. The ALJ did not question the vocational expert about how the claimant could perform the cashier job in light of her overhead reaching restriction. The Ninth Circuit noted that the DOT refers to occupations, not specific jobs. "'Occupation' is a broad term that includes 'the collective description of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" For this reason, "not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for an occupation will be apparent or obvious." *Id.* at 807-08 (citation omitted). The DOT's description of a cashier specified that a cashier may need to "'reach frequently,'" yet also specified "such mundane functions as making change, operating a cash register, selling tickets, and scanning Universal Product Codes – none of which require overhead reaching." *Id.* at 808 (citation omitted). "[A]nyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to. . . . Had the expert opined that [the claimant] could stock shelves or wash windows, the conflict would have been apparent and obvious, and the ALJ would have needed to follow up with more specific questions. But where the frequency or necessity of a task is unlikely and unforeseeable – as it is with cashiers having to reach overhead – there's no similar obligation." *Id.* "Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the [DOT]." *Id.* On the other hand, "the more obscure the job, the less likely common experience will dictate the result." *Lamear*, 865 F.3d at 1205. In *Lamear*, the court decided that "we cannot determine from this record,

the DOT, or our common experience" whether the jobs of office helper, mail clerk or parking lot cashier could be performed by a claimant limited in his ability to handle, finger and feel with his left hand.  *Id.* at 1205-06.

Here, the ALJ limited Plaintiff to occasional overhead reaching bilaterally.  AR 42. The vocational expert ("VE") questioned the ALJ to clarify that the only restriction on the upper extremities was occasional reaching overhead.  AR 113-14.  The ALJ answered that the restriction was for "doing things with your hands overhead [or] just reaching for something overhead."  AR 114.  The VE responded "[o]n an occasional basis.  I understand."  AR 114.  The VE opined that Plaintiff could perform the representative sedentary jobs of office helper, assembler and production/operator.  AR 114.  The ALJ determined that the VE's testimony was consistent with the DOT.  AR 50.

Thus, the VE was well aware that Plaintiff was limited to occasional overhead reaching when answering the hypothetical questions.  Although it would have been preferable for the ALJ to ask the VE to explain why Plaintiff would be able to perform the three representative jobs, the ALJ's failure to do so in this case is not fatal.  *See Cattano v. Berryhill*, 686 Fed. Appx. 408, 411 (9th Cir. 2017) ("vocational expert was aware that [claimant] could not reach overhead with his right arm when he testified [claimant] could still perform those jobs").  The job description for an assembler is: "Inserts paper label in back of celluloid or metal advertising buttons and forces shaped stickpin under rim."  (DOT 734.687-018.)  Nothing in the assembler's job description appears to require overhead reaching such that the ALJ would have been required to ask additional questions.  *See Moreno v. Berryhill*, 2017 U.S. Dist. LEXIS 70806, *13-*14 (E.D. Cal. May 8, 2017) (applying *Gutierrez* to reject similar argument by claimant as to assembler job); *Sanchez v. Colvin*, 2016 U.S. Dist. LEXIS 11020, *53-*54 (C.D. Cal. Jan. 29, 2016) ("Nothing in those descriptions of tasks indicates Plaintiff would need to use her arms above shoulder level" for assembler job).  Similarly, the job description of a clerk in DOT 249.587-014 states:  "Tears or cuts out marked articles or

advertisements from newspapers and magazines, using knife or scissors. Records

name of publication, page and location, date, and name of customer on label, and

affixes label to clipping." Nothing in this job description facially appears to require more

than occasional overhead reaching. Accordingly, any error as to the production/

machine operator (DOT 692.685-130) is harmless.

### D.    Hand Limitations

Plaintiff advises the court that she submitted a subsequent application for

benefits based, at least in part, on an MRI dated March 3, 2017, almost one year after

the ALJ's decision on March 14, 2016. The March 3, 2017 MRI shows that Plaintiff's

left frontal lesion grew "slightly larger." (Dkt. No. 29-1 at 1.) "Although this could

represent evolving postinflammatory change, the possibility of a low-grade neoplasm

such as a glioma must be considered." (*Id.* at 2.) Plaintiff advises the court that she is

awaiting surgery.[4] (Joint Stipulation at 18.)

The outcome of the future surgery or biopsy, and the outcome of the subsequent

application for benefits are as yet unknown. When a later application for benefits is

granted and the onset date is at or near the time a claimant was previously found not

disabled, a district court may remand. "The 'reasonable possibility' that the subsequent

grant of benefits was based on new evidence not considered by the ALJ as part of the

first application indicates that further consideration of the factual issues is appropriate to

determine whether the outcome of the first application should be different." *Luna v.*

*Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Because the record before the court

contains no evidence about the outcome of the later application for benefits, an analysis

based on *Luna* is premature. The new evidence is not in the administrative record in

this case. Although the March 3, 2017 MRI pre-dates the Appeals Council decision on

---

[4] The Commissioner notes that Plaintiff submitted a June 2017 MRI with her later
application for benefits. (Joint Stipulation at 23.) At the time of the hearing on the
applications currently before this court, Plaintiff explained that she was going to get
periodic MRIs and, if the lesion grew, she would need a biopsy. AR 88.

July 24, 2017, there is no indication it was submitted to the Appeals Council. AR 2 (listing evidence submitted).

When evidence is submitted for the first time to the district court, the court may remand to the Commissioner if the new evidence is "material to a disability determination" and "good cause" exists for failure to submit the evidence earlier. *Mayes v. Massanari*, 276 F.3d 453, 461-62 (9th Cir. 2001). New evidence is material only if it "bear[s] 'directly and substantially on the matter in dispute,'" and a "reasonable possibility" exists that it would have "changed the outcome." *Id.* at 462.

Plaintiff does not show good cause for failing to submit the evidence earlier to the Appeals Council. Moreover, the March 3, 2017 MRI does not facially establish a connection to Plaintiff's hand limitations. *See Blansette v. Berryhill*, 721 Fed. Appx. 715, 717 (9th Cir. 2018) (noting remand inappropriate when new evidence post-dated relevant period and did not include new functional limitations). The ALJ noted Plaintiff's subjective complaints that she had swollen hands, could no longer wear jewelry, had difficulty cutting vegetables and her finger got numb. AR 43, 45. The ALJ reviewed the medical records. In June 2012, someone tried to take a bag from Plaintiff but she held onto it. She had slight tenderness of the shoulder and elbow, and motor strength was normal. AR 616. An x-ray of the right hand was normal. AR 597. In 2013, Plaintiff's physician did not indicate hand restrictions.[5] AR 942. Nor did the State Agency physicians, as the ALJ noted, in 2013-2014. AR 46. Plaintiff had full range of motion at the consultative examination on March 22, 2014. Her motor strength was 5/5 in her upper extremities, including grip strength bilaterally. AR 722. Plaintiff reported performing activities of daily living without assistance. AR 720. Plaintiff had no manipulative limitations. AR 723.

---

[5] An x-ray of the right hand indicated a new small fusiform calcification about 3mm projecting over the extensor tendons of the thumb near the radial styloid and a slight progression of osteoporotic space of the thumb metacarpal. AR 985-86.

Citing March 2015 records, the ALJ concluded that the record did not support manipulative limitations.  AR 46.  In early 2015, Plaintiff complained of hand numbness, parasthesias and weakness.  AR 858, 925, 1032, 1040.  On neurological examination on March 12, 2015, Plaintiff's strength was 5/5 of the upper extremities bilaterally with normal muscle tone.  She had full range of motion of the upper extremities.  Her sensory examination was normal, and she had normal coordination and cerebellar reflexes.  AR 927.  On March 27, 2015, the physician noted Plaintiff had 4/5 grasp, wrist flexion and extension, and elbow flexion and extension, with the right side weaker than the left.  AR 842-43.  In August 2015, as noted by the ALJ, Plaintiff was swimming in the ocean when she was slammed into the ocean floor.  She was taken by ambulance to UCLA and had a seizure on the way.  AR 813.  On physical examination, she had tenderness and spasms in the cervical paraspinal muscles.  Motor examination of the upper extremities was 4+/5 bilaterally at the deltoids, biceps, triceps, wrist flexors, wrist extensors, finger flexors, finger extensions, finger abductors, finger adductors, thumb extensors, thumb opposition and grip.  She had 4/5 grasp, wrist flexion and extension, and elbow flexion and extension.[6]  Hoffman's sign was negative.  AR 814.  On September 11, 2015, motor strength in her upper extremities was 4/5.  Sensory and reflex examination were normal.  She was encouraged to continue a home exercise program including strengthening and regular aerobic activities.  AR 782.  On November 30, 2015, Plaintiff had a cervical epidural steroid injection and an epidurogram, which was normal.  AR 774-777.  The ALJ discounted the opinion of a physician's assistant in December 2015 that, among other things, would have limited Plaintiff to reaching, handling (grasping, twisting, turning) and fingering approximately 25% of the workday.  AR 48, 877.

_____

[6]  Motor strength of 4/5 or 4+/5 means that the claimant is able to move muscles against the examiner's resistance.  *See Hipkins v. Barnhart*, 305 F. Supp. 2d 394, 396 n.1 (D. Del. 2004) (describing motor strength scale) (citing *The Merck Manual of Diagnosis and Therapy*, § 14, at 1347 (17th ed. 1999).

Plaintiff did not argue that the ALJ's reasons for finding Plaintiff "not entirely credible" and the reasons for discounting the opinion of a physician assistant, who is not an acceptable medical source, are unsupported by substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (requiring only reasons germane to other source such as physician's assistant). Substantial evidence supports the ALJ's findings on the administrative record.[7]

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: November 27, 2018

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

---

[7] As discussed above, nothing in this order forecloses a future *Luna* analysis depending upon the outcome of the later application for benefits and whether the associated medical records on that application relate to the period on or before the ALJ's decision.